UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JULIE J.,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CASE NO. C18-426 BAT

**ORDER AFFIRMING THE COMMISSIONER'S DECISION AND DISMISSING THE CASE WITH PREJUDICE**

Plaintiff appeals the denial of her application for Disability Insurance Benefits. She contends the ALJ erred by (**1**) misevaluating the medical opinion evidence; (**2**) rejecting plaintiff's testimony; and (**3**) rejecting lay witness testimony by plaintiff's husband. Dkt. 10. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## BACKGROUND

Plaintiff is currently 55 years old, completed two years of college, and has worked as a hair stylist and a telephone operator. Tr. 65, 95, 233. In 2014, she applied for benefits, initially alleging disability as of September 15, 2009, and later amending her alleged onset date to January 24, 2013. Tr. 43–44, 202. Her application was denied initially and on reconsideration. Tr. 95–121. After conducting hearings in May and September 2016, the ALJ found plaintiff not

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 1

disabled. Tr. 13–33, 39–94. As the Appeals Council denied plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1–5.

## THE ALJ'S DECISION

The ALJ found that plaintiff last met the insured status requirements of the Social Security Act on September 30, 2013. Utilizing the five-step disability evaluation process,[1] the ALJ found:

> **Step one:** Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 24, 2013, to her date last insured of September 30, 2013.
>
> **Step two:** Through the date last insured of September 30, 2013, plaintiff had the following severe impairments: right carpal tunnel syndrome, status-post right carpal tunnel release; right shoulder strain vs. right frozen shoulder, status-post right distal clavicle resection and right shoulder arthroscopy; right medial epicondylitis, status-post right ulnar nerve decompression; and right pisotriquetral joint synovitis.
>
> **Step three:** From the amended onset date of January 24, 2013, through the date last insured of September 30, 2013, these impairments did not meet or equal the requirements of a listed impairment.[2]
>
> **Residual Functional Capacity ("RFC"):** From the amended onset date of January 24, 2013, through the date last insured of September 30, 2013, plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk about 6 hours in an 8-hour workday, with regular breaks, and sit about 6 hours in an 8-hour workday, with regular breaks. Plaintiff had an unlimited ability to push/pull within these exertional limitations. Plaintiff could frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. Plaintiff could frequently balance, stoop, kneel and crouch. Plaintiff could occasionally crawl. Plaintiff could frequently reach, handle, finger, and feel with the right dominant arm. Plaintiff should avoid concentrated exposure to vibration and hazards.
>
> **Step four:** From the amended onset date of January 24, 2013, through the date last insured of September 30, 2013, plaintiff could perform her past work as a hair stylist. This did not require the performance of work-related activities precluded by plaintiff's RFC. Plaintiff was therefore not disabled between January 24, 2013, and September 30, 2013.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

Tr. 13–33.

**DISCUSSION**

The Court will reverse an ALJ's decision only if it is not supported by substantial evidence or if the ALJ applied the wrong legal standard. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Even then, the Court will reverse the ALJ's decision only if the claimant demonstrates that the ALJ's error was harmful. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Even if the evidence is susceptible to more than one rational interpretation, the Court will uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Id.* at 1111. Although plaintiff contends that the ALJ misevaluated (1) the medical opinion evidence, (2) plaintiff's testimony, and (3) the lay testimony of plaintiff's husband, the Court finds that the ALJ's decision was supported by substantial evidence and was free from harmful legal error.

**1. Medical Opinion Evidence**

Plaintiff contends that the ALJ harmfully erred by rejecting the medical opinions of treating physician Kyle Oh, M.D., treating orthopedist Steven Sun, M.D., and treating psychologist Gary VanDalfsen, Ph.D. The Court disagrees.

**a. Treating Physician Dr. Oh and Treating Orthopedist Dr. Sun**

Treating physician Dr. Oh's and treating orthopedist Dr. Sun's medical opinions are contradicted by the opinions of reviewing physician Norman Staley, M.D., and examining orthopedist Howard Putter, M.D. Tr. 114–17, 561–71. The ALJ was therefore required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr.

Oh's and Dr. Sun's assessments of plaintiff's physical limitations. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ gave significant weight to Dr. Oh's March 2014 opinion—though she erroneously attributed that opinion to Dr. Sun—that assigned plaintiff a 2% impairment for her right carpel tunnel release, 2% impairment for her right ulnar nerve entrapment, and 6% impairment for her right frozen shoulder, totaling a 10% impairment for the upper extremities. Tr. 26 (citing Tr. 680). The ALJ noted that the March 2014 treating opinion was consistent with the ALJ's conclusion that plaintiff's "right upper extremity conditions cause physical limitations, but not to the degree that those limitations are 100% disabling." Tr. 26. The ALJ also gave significant weight to Dr. Staley's February 2015 reviewing opinion that plaintiff could perform light work with some postural and environmental restrictions, and that plaintiff could perform frequent reaching, handling, fingering, and feeling in both upper extremities. Tr. 26 (citing Tr. 115–16). The ALJ gave partial weight to orthopedist Dr. Putter's September 2013 examining opinion that plaintiff's right rotator cuff strain, right carpal tunnel syndrome, and right medial epicondylitis had reached medical maximum improvement; that those three impairments caused no restrictions; and that plaintiff's new claim of pisotriquetral synovitis was unrelated to her industrial injury. Tr. 27 (citing Tr. 561–71). On one hand, the ALJ noted that Dr. Putter's opinion merited significant weight because he examined plaintiff just two weeks prior to the date last insured and because Dr. Putter had the opportunity to review the chronological medical evidence from the date of plaintiff's workplace injury.[3] Tr. 27. On the other hand, although the ALJ agreed with Dr. Putter's opinion that plaintiff's right shoulder, elbow, and carpel tunnel

---

[3] The workplace injury occurred on September 15, 2009, i.e., more than three years before the alleged disability onset date of January 14, 2013.

syndrome each improved with surgery, she did not adopt Dr. Putter's conclusion that plaintiff had no residual limitations from those conditions; instead the ALJ agreed with Dr. Staley's opinion that plaintiff was limited to light exertional work prior to the date last insured. Tr. 27. Moreover, while Dr. Putter did not consider plaintiff's pisotriquetral synovitis because he deemed it unrelated to the industrial injury, the ALJ noted that plaintiff subsequently underwent an excision of the pisoform. Tr. 27.

The ALJ gave little weight to Dr. Oh's and Dr. Sun's opinions in 2013 and 2014 (and a confirming opinion in 2016) that suggested that during the relevant time period plaintiff was limited to sedentary work, could not repetitively use her right upper extremity, and could not return to her prior work as a hair stylist. Tr. 27–28 (citing Tr. 689, 702, 899, 994, 996, 1007). The ALJ also gave little weight to the conclusion in the September 2014 reviewing opinion of Robert Hander, M.D., that there was insufficient evidence to make a disability determination because the ALJ determined that Dr. Hander's opinion was based on a limited amount of the record and was contradicted by Dr. Staley's February 2015 opinion of non-disability that considered an updated record. Tr. 29 (citing Tr. 99–102).

The ALJ stated specific and legitimate reasons supported by the medical record to discount Dr. Oh's and Dr. Sun's assessments of plaintiff's lifting and manipulative limitations and their opinions that plaintiff was severely limited in her ability to work during the period at issue. The ALJ noted that while plaintiff had a history of right carpal tunnel release in 2009 and an ulnar nerve transposition in 2010, a nerve conduction study of the right upper extremity in December 2011 conducted by Dr. Oh showed no evidence of recurrent carpal tunnel syndrome or cubital tunnel syndrome. Tr. 28 (citing Tr. 566). The ALJ noted that the medical records from the alleged onset date of January 24, 2013, through the date last insured of September 30, 2013,

revealed no specific complaints or treatment relating to the right carpal tunnel or right elbow, and when plaintiff was seen by Dr. Putter on September 18, 2013, plaintiff had normal sensation throughout her right hand with negative Tinel's and Phalen's signs, good motor strength, full range of motion, and normal sensation in the right elbow. Tr. 28, 569–70. The ALJ noted that the records from the relevant period and Dr. Putter's findings were similar to Dr. Oh's examination findings in March 2014, which reported that plaintiff showed grossly intact motor strength and in both upper extremities. Tr. 28 (citing Tr. 680).[4] The ALJ noted that although plaintiff underwent right shoulder surgery in January 2011, plaintiff told Dr. Putter in September 2013 that surgery had been successful in helping to regain her range of motion and to resolve the pain in her shoulder. Tr. 28 (citing Tr. 568). The ALJ stated that although plaintiff had a new onset of pain in the right pisotriquetral area in December 2012, for which she underwent surgery in July 2014, both preoperatively in 2013 and 2014 and postoperatively in 2016, plaintiff's examinations showed relatively benign symptoms; moreover, during Dr. Putter's September 2013 examination, even while plaintiff reported tenderness in the pisotriquetral area she retained a grip strength of 30 pounds and 45 pounds in the right hand. Tr. 28 (citing Tr. 569–70). The ALJ noted that Dr. Sun's and Dr. Oh's opinions also appeared extreme given that plaintiff had no impairment or restriction in the left upper extremity during the period at issue. Tr. 29. While acknowledging plaintiff's knee injections, the ALJ nonetheless found Dr. Oh's assessment of standing/walking restrictions to be inconsistent with the evidence that plaintiff's knee problems, ankle problems, and obesity were non-severe. Tr. 29. The ALJ noted that Dr. Oh's March 2014 examination assigned plaintiff only a 10% rating for plaintiff's various right upper extremity

---

[4] Dr. Oh also noted that the range of motion for plaintiff's right shoulder was grossly within normal limits. Tr. 680.

impairments. Tr. 29 (citing Tr. 680–81). Furthermore, the ALJ found that plaintiff's pain complaints were not fully reliable given evidence of her symptom magnification, unremarkable presentation during appointments, and daily activities—such as long, active vacations and returning to work as a hairdresser in 2016— that belied claims of being bedridden the majority of the day. Tr. 29.

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting the treating opinions of Drs. Oh and Sun because the ALJ failed to comprehend that plaintiff suffered from repetitive motion injuries and the doctors concluded she could not return to work that involved frequent, repetitive use of her upper extremities such as her past work as a hair stylist; the ALJ erroneously failed to account for bilateral knee pain in setting forth standing/sitting limitations for the RFC; and the VE inappropriately referred to his own experience as a hair stylist decades before in concluding that the job permitted standing/sitting breaks whereas plaintiff's salon was so busy she could not take such breaks. These arguments fail because they do not undermine the reasonableness of the ALJ's inferences drawn from the record. First, to the extent Drs. Oh and Sun concluded that plaintiff lacked the ability to return to her past work as a hair stylist, such conclusions are reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d), 416.927(d). Second, it is clear that the ALJ rejected the opinions of Drs. Oh and Sun and accepted the opinion of Dr. Staley with respect to plaintiff's ability to perform frequent, reaching, handling, fingering, and feeling in both upper extremities because such limitations were contradicted by Dr. Putter's conclusions regarding plaintiff's strength, range of motion, and sensation tests, as well as by the treatment notes by Drs. Oh and Sun that plaintiff exhibited relatively benign symptoms with respect to her right upper extremity, and no symptoms whatsoever regarding her left upper extremity, during the period at issue. Tr. 26–29, 570, 680.

Third, the ALJ supported the conclusion that plaintiff did not have a severe knee impairment with specific examples from the record, including that plaintiff exhibited a normal gait and had only mild swelling after her knee injections, plaintiff had knee injections in April 2013 and then no knee injections until a year later, and in July 2013 plaintiff reported returning from a 30-day trip to Europe where she did well walking and was looking to start exercising in a gym. Tr.15, 25, 685–87, 904, 908, 909, 913. Fourth:

> We have never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed. The vocational expert merely has to find that a claimant can or cannot continue his or her past relevant work as defined by the regulations . . . .

*Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001). Here, the vocational expert testified that plaintiff could continue her past relevant work as a hair stylist as the job is generally performed because in 90% of salons hair stylists generally are not required to stand more than six hours at a time. Tr. 86. Although plaintiff testified that her past place of employment was so busy that breaks were impossible to take, Tr. 90, the vocational expert was not required to testify as to how plaintiff had actually performed the job of hair stylist in her exceptionally busy salon. Because nothing plaintiff has presented suggests that, in general, hair stylists are required to stand for longer than six hours at a time with no breaks, it was immaterial whether or not the vocational expert testified that he had previously worked as a hair stylist. *See Buck v. Berryhill*, 869 F.3d 1040, 1051 (9th Cir. 2017). ("[A]t least in the absence of any contrary evidence, a VE's testimony is one type of job information that is regarded as inherently reliable; thus, there is no need for an ALJ to assess its reliability."). Fifth, although the ALJ mistakenly attributed Dr. Oh's March 2014 letter to Dr. Sun, the Court finds this error to be harmless. Whether attributed to Dr. Oh or to Dr. Sun, the March 2014 opinion suggests that plaintiff's physical limitations were not

as severe as she alleged and contradicts Dr. Oh's and Dr. Sun's opinion that plaintiff is disabled due to limitations in her right upper extremity.

The Court finds that the ALJ supported her decision with substantial evidence and did not harmfully err by discounting the treating opinions of Drs. Oh and Sun.

### b. Treating Psychologist Dr. VanDalfsen

Because treating psychologist Dr. VanDalfsen's medical opinion was contradicted by the opinions of reviewing psychologists Diane Fligstein, Ph.D., and James Bailey, Ph.D., and with respect to embellishment of symptoms by the opinion of treating psychiatrist Norman Tsai, M.D., the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for discounting Dr. VanDalfen's assessment of plaintiff's mental limitations. Tr. 103–05, 117–19, 901, 995; *Bayliss*, 427 F.3d at 1216.

In an August 2014 letter, Dr. VanDalfsen noted that he had treated plaintiff since 2005 and opined, based on clinical observations and plaintiff's self-report, that plaintiff would be unable to function emotionally in a manner that would allow her to obtain and maintain employment:

> Specifically, it is my clinical judgment that [plaintiff] would likely have difficulties maintaining appropriate interactions with supervisors, coworkers and, if applicable, the public. I believe that her depression would likely prevent her from maintaining concentration, pace and persistence in work tasks/duties. Because there are days that [plaintiff] has trouble even getting out of bed, I believe that it is likely that her depression would interfere with her ability to maintain a regular work schedule without absences, tardiness, or extra rest breaks. Finally, I believe that [plaintiff's] depression would significantly interfere with her ability to tolerate the normal stress of a work environment.

Tr. 901. In a May 2016 letter, Dr. VanDalfsen clarified that plaintiff had been unable to maintain full-time employment due to her mental/emotional impairments since at least January 2013. Tr. 995. The ALJ cited specific and legitimate reasons supported by substantial evidence for discounting Dr. VanDalfsen's opinion.

First, the ALJ referred to the step two determination that plaintiff did not have a severe mental impairment from January to September 2013 because there were no episodes of decompensation and there was no more than a mild impairment in activities of daily living, social functioning, and concentration, persistence, or pace. Tr. 30. For example, although plaintiff testified that she was dependent on her husband even for basic daily activities during the period from January through September 2013, the ALJ noted that this account appeared inconsistent with her 30-day trip to Europe in July 2013. Tr. 19; *compare* Tr. 54 (plaintiff testifying that in 2013 her activity level was "[l]ay in bed all day and like I'd try to get up at like 2:00 or 3:00 and I'd just sit there and do nothing" and "I couldn't do laundry. I couldn't, like, get down the stairs.") *with* Tr. 908 (Dr. Tsai's July 2013 note "Constitutional: Negative for irritability and fatigue (more motivated now did well in walking with [E]ur[op]e vacation, looking to start ex[]ercises with gym.)"). Similarly, despite claims that her mental conditions were debilitating and remained unchanged since 2013, plaintiff was able to travel to Disneyland in January 2014, compete for a spot on the television reality show *The Biggest Loser* from July through September 2015, travel to Sweden for three weeks in December 2015, and return to part-time work as a hairdresser from January to September 2016. Tr. 19 (citing Tr. 45, 588, 1037, 1039, 1041, 1043, 1049, 1122, 1097, 1139). With respect to social functioning, the ALJ noted that her audition for *The Biggest Loser* required her to work with her son and to speak in front of the cameras, that plaintiff was consistently described as cooperative at appointments, was able to interact appropriately in a crowded airport and airplane, and that plaintiff reported in 2016 that she got along with people at her work as a hair stylist. Tr. 19 (citing Tr. 1097); *see* Tr. 1041, 1043, 1049. With respect to concentration, persistence, or pace, the ALJ noted that during the

relevant period, mental status examinations showed that she was consistently alert, attentive, and fully oriented during appointments, with intact memory and cognition. Tr. 19.

Second, the ALJ found that Dr. VanDalfsen's opinion was out of proportion to his clinical observations and was based in part on plaintiff's unreliable self-reporting of symptoms. Tr. 30. The ALJ noted that although Dr. VanDelfsen's notes described plaintiff as dysphoric and anxious at times, they otherwise indicated that she retained normal affect, cognitive functioning, interpersonal behavior, and functional status, as well as assessed Global Assessment of functioning ("GAF") scores of 65. Tr. 30 (citing Tr. 710–898). By definition, a GAF score of 65 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . . but is generally functioning pretty well, has some meaningful personal relationships." *See* STATISTICAL AND DIAGNOSTIC MANUAL OF MENTAL DISORDERS 34 (4th ed. Text Revision American Psychiatric Ass'n 1994) ("DSM-IV-TR"). The ALJ further noted that plaintiff's self-reporting of symptoms was unreliable, as indicated by treating psychologist Dr. Tsai referring to plaintiff's tendency to embellish her symptoms. Tr. 30, 904.

In sum, the ALJ provided at least two specific and legitimate reasons for rejecting Dr. VanDelfsen's opinion: (1) it was inconsistent with her daily activities and her own testimony; and (2) it was inconsistent with Dr. VanDelfsen's own clinical notes and was undermined by a reliance, in part, on plaintiff's unreliable embellishments as observed by treating psychiatrist Dr. Tsai. To the extent the ALJ erroneously questioned Dr. VanDelfsen's opinion because it relied in part on the testimony of plaintiff's husband, which was deemed unreliable given plaintiff's concern that he was abusing prescription drugs, such an error was harmless. So long as an ALJ provides one or more valid reasons for disbelieving testimony, any error in considering an invalid reason is harmless. *Molina*, 674 F.3d at 1115.

1  The Court finds that the ALJ supported her decision with substantial evidence and did not harmfully err by discounting the treating opinion of Dr. VanDelfsen.

**2. Plaintiff's Testimony**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons for rejecting plaintiff's testimony about her symptoms and functional limitations. The Court disagrees.

If there is medical evidence establishing an objective basis for pain and related symptoms, and no evidence affirmatively suggesting that the claimant was malingering, the ALJ's reasons for rejecting a claimant's testimony must be clear and convincing. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The ALJ discounted plaintiff's testimony about the severity of her symptoms and limitations because it was inconsistent with her longitudinal treatment history, the objective findings, her performance on physical and mental status examinations, and her activities during the relevant period. Tr. 21–31. In sum, the ALJ noted that from January to September 2013 medical and other evidence demonstrated that plaintiff exhibited a full range of motion, good strength, and only minor impairment of her right upper extremity, performed well in physical and mental status examinations, and engaged in activities such as doing well on a 30-day Europe vacation involving walking that belied her testimony about an inability to do anything on a daily basis. These were clear and convincing reasons for discounting plaintiff's testimony about her symptoms and physical and mental limitations.[5]

---

[5] Because the ALJ stated clear and convincing reasons for discounting plaintiff's testimony, the Court need not address the parties' arguments about whether Dr. Tsai's opinion that plaintiff was embellishing her symptoms constituted evidence of malingering that would obviate the ALJ's duty to state clear and convincing reasons.

ORDER AFFIRMING THE COMMISSIONER'S DECISION AND
DISMISSING THE CASE WITH PREJUDICE - 12

The Court finds that the ALJ supported her decision with substantial evidence and did not harmfully err by discounting the severity of plaintiff's testimony regarding her symptoms and limitations.

### 3. Lay Testimony by Plaintiff's Husband

Plaintiff contends that the ALJ failed to provide specific, germane reasons for rejecting the lay testimony of plaintiff's husband. *See Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 1993). The Court disagrees.

The ALJ rejected the testimony of plaintiff's husband for the same reasons she rejected plaintiff's testimony: inconsistency with the longitudinal treatment history, the objective findings, her performance on physical and mental status examinations, and her activities during the period at issue. Tr. 31. Because these reasons were clear and convincing reasons to reject plaintiff's testimony, the Court finds these reasons also were specific and germane reasons to reject the lay testimony of plaintiff's husband.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 13th day of November, 2018.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge